UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | Case No. 04 B 45914 |
| LAWRENCE LECK, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| EDWARD KURCZABA, ) | Adversary Case No. 05 A 01425 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LAWRENCE LECK, ) | |
| ) | Honorable John D. Schwartz |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of debtor Lawrence Leck ("Leck") to dismiss the adversary complaint of plaintiff Edward Kurczaba ("Kurczaba") under Federal Rule of Civil Procedure 12(b)(6), made applicable to proceedings before this court by Federal Rule of Bankruptcy Procedure 7012, for failure to state a claim upon which relief can be granted. For the reasons set forth below, the court grants Leck's motion to dismiss, but without prejudice to Kurczaba filing an amended complaint.

## I. JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) as a matter arising under the Bankruptcy Code. The issue of whether Leck's debt is dischargeable under 11 U.S.C. § 523(a)(4) is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

The facts in this case are not in dispute. Kurczaba retained attorney Leck to represent him in a personal injury action arising from an automobile accident that occurred on January 31, 1999. Undertaking the representation, Leck filed a complaint on Kurczaba's behalf for injuries sustained as a result of the accident. Subsequently, on September 22, 2000, Leck was disbarred on consent. About six months later, on March 12, 2001, Kurczaba's complaint was dismissed for want of prosecution. At no time did Leck tell Kurczaba that he was no longer licensed to practice law in Illinois or refer Kurczaba's case to another attorney.

In October 2002, Kurczaba retained his current counsel, who initiated a legal malpractice suit on Kurczaba's behalf against Leck. According to the adversary complaint, investigation by that attorney revealed that Leck failed to inform Kurczaba that he had been disbarred, fraudulently acted as though he were prosecuting the personal injury action, and used another attorney's name and ARDC number on a motion in an attempt to vacate the dismissal of the suit for want of prosecution.

On April 3, 2003, the parties executed a "Settlement Agreement and Release" (the "Settlement Agreement"), whereby Leck agreed to pay Kurczaba the sum of $50,000.00 "as full and final settlement of th[e] matter." The payment was to be made by June 30, 2003, although the Settlement Agreement allowed for a seven-day grace period.[1] In the event that Leck breached

---

[1] Paragraph 3 of the Settlement Agreement states that Leck "will pay Fifty Thousand and No/100 ($50,000.00) dollars" to Kurczaba "on or before the 30th day of June 2003 at 2:00 p.m." and that the parties agree that Leck "will be allowed a seven (7) day period of grace for payment or until the 7th day of July 2003 at 2:00 p.m." However, paragraph 6 notes that "any and all payments are to be delivered . . . by 2:00 p.m., on the 16th day of June 2003 and no later than 2:00

2

the contract by failing to pay Kurczaba in a timely manner, the Settlement Agreement provided for the assessment of a "penalty" of $30,000.00, in addition to the agreed-upon settlement of $50,000.00.

Leck failed to timely make the settlement payment under the Settlement Agreement. Thus, on July 22, 2003, Kurczaba filed an action in Cook County Circuit Court to enforce the terms of the Settlement Agreement. Approximately six months later, on February 19, 2004, the circuit court entered judgment in favor of Kurczaba and against Leck in the amount of $80,000.00.[2] Subsequently, on December 14, 2004, Leck filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[3]

On June 16, 2005, Kurczaba filed an adversary complaint seeking to except the $80,000.00 debt from discharge pursuant to 11 U.S.C. § 523(a)(4). Specifically, Kurczaba claims that the debt cannot be discharged because it resulted from Leck's fraudulent actions while acting as Kurczaba's counsel in the personal injury action. On July 15, 2005, Leck filed

---

p.m. on the 23rd day of June 2003." The adversary complaint simply notes that Leck failed to make the required payment in a timely manner, and Leck does not dispute that allegation. Thus, the discrepancy in the due dates is of no moment in this matter.

[2] Because neither party has submitted a copy of the state court judgment, the court is unable to determine the exact nature of the state court's findings.

[3] On Schedule D, Leck lists Kurczaba as a creditor holding a secured claim in the amount of $80,000.00. He inadvertently notes that the date the claim was incurred was February 2001, rather than February 2004 when the circuit court entered judgment against him. More significantly, however, Leck fails to include a description and market value of the property subject to lien. He indicates on Schedule A that he owns no real property, and the total value of his personal property is only $4,400.00 according to Schedule B. Given the numerous omissions on his schedules–including Schedule J which is completely blank–as well as the fact that the total amounts of both purportedly secured claims on Schedule D are listed as unsecured portions in the last column, the Court suspects that the attorney who completed Leck's forms is either careless, not well-versed in the area of bankruptcy, or both.

the instant motion to dismiss the complaint. In short, he contends that the state court complaint is a breach of contract suit–not a fraud claim, that any fraudulent conduct on Leck's part was not the proximate cause of Kurczaba's damages, and that, in any event, the $30,000.00 payment for untimely remittance constitutes an unenforceable penalty that was not caused by fraud.

### III. DISCUSSION

#### A.    Motion to Dismiss

The allegations of a complaint should not be dismissed for failure to state a claim under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Walker v. Nat'l Recovery, Inc., 200 F.3d 500, 502-03 (7th Cir. 1999); Veazey v. Commc'ns & Cable of Chi., Inc., 194 F.3d 850, 854 (7th Cir. 1999); Colfax Corp. v. Ill. State Toll Highway Auth., 79 F.3d 631, 632 (7th Cir. 1996). The purpose of a motion to dismiss is to test the sufficiency of the complaint rather than to determine the merits of the case. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir. 1991); Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). Thus, the issue is not whether Kurczaba will ultimately prevail but whether he has pleaded a cause of action sufficient to entitle him to offer evidence in support of his claim. See Scheuer, 416 U.S. at 236. In deciding this motion, the court must accept as true all well-pleaded material facts in the complaint and draw all reasonable inferences in favor of Kurczaba. See Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2000); Jackson v. E.J. Brach Corp., 176 F.3d 971, 977-78 (7th Cir. 1999); N. Trust Co. v. Peters,

69 F.3d 123, 129 (7th Cir. 1995).

Federal notice pleading standards generally call for the plaintiff to provide the defendant with fair notice of the claims against him, as well as the grounds for those claims. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). Specifically, Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint identify the basis for jurisdiction and contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir.), cert. denied, 506 U.S. 893 (1992). Mere conclusory allegations unsupported by facts will not withstand a motion to dismiss. Reed v. City of Chi., 77 F.3d 1049, 1051 (7th Cir. 1996); Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein), 272 B.R. 463, 473 (Bankr. N.D. Ill. 2001).

Moreover, pursuant to Rule 9(b), incorporated by reference in Bankruptcy Rule 7009, when a party alleges fraudulent conduct in federal pleadings, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); see also In re EDC, Inc., 930 F.2d 1275, 1281 (7th Cir. 1991). Such particularity is required both to ensure that a defendant can adequately respond to the complaint and to protect him from unwarranted injury to his reputation. Purcell v. Janikowski (In re Janikowski), 60 B.R. 784, 790 (Bankr. N.D. Ill. 1986) (citing Rudolph v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 100 F.R.D. 807, 809 (N.D. Ill. 1984)). Rule 9(b), however, must be read in conjunction with Rule 8(a). Id. Thus, a plaintiff need not plead each element of fraud as long as the circumstances constituting fraud have been sufficiently set forth. Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir.

5

1994) (internal quotation omitted) (noting that the complaint must include merely the basic outline of the fraud, stating "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff"); DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) (explaining that particularity means "the who, what, when, where, and how: the first paragraph of any newspaper story"); Helms v. Arboleda (In re Arboleda), 224 B.R. 640, 650 (Bankr. N.D. Ill. 1998). Finally, although particularity with respect to a defendant's mental state is not required by Rule 9(b), the complaint must provide a basis for believing that the plaintiff could prove scienter. Dearborn Fin. Servs. Corp. v. Heath, No. 98CV5222, 1999 WL 1011860, at *2 (N.D. Ill. Sept. 30, 1999).

**B.     11 U.S.C. § 523(a)(4)**

Section 523 of the Bankruptcy Code provides for various exceptions to the dischargeability of debts. The party seeking to establish an exception to the discharge of a debt bears the burden of proof by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991); In re Sheridan, 57 F.3d 627, 633 (7th Cir. 1995); Kress v. Kusmierek (In re Kusmierek), 224 B.R 651, 655 (Bankr. N.D. Ill. 1998). To advance the policy of giving the debtor a fresh start in bankruptcy, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. Meyer v. Rigdon, 36 F.3d 1375, 1385 (7th Cir. 1994).

Kurczaba contends that the debt at issue is nondischargeable under § 523(a)(4), which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Accordingly, in order for the debt in this

6

case to be held nondischargeable under § 523(a)(4), Kurczaba has the burden of proving that Leck committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. See id.; see also Lexington Health Care Ctr. of Elmhurst, Inc. v. McDade (In re McDade), 282 B.R. 650, 657 (Bankr. N.D. Ill. 2002).

Kurczaba does not allege that Leck's actions constituted embezzlement or larceny. Nor does he argue the alternative theory of defalcation under the first prong of § 523(a)(4). Instead, Kurczaba contends that Leck committed fraud while serving as Kurczaba's counsel. Thus, in order to prevail under § 523(a)(4), Kurczaba must establish as hereinafter set forth that an express trust or fiduciary relationship existed and that the debt was caused by Leck's fraud while acting as a fiduciary. See Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir. 1987); Rae v. Scarpello (In re Scarpello), 272 B.R. 691, 701 (Bankr. N.D. Ill. 2002).

1.  **Fiduciary Relationship**

The first requirement for application of § 523(a)(4) is that a fiduciary relationship exists. Law Firm of Wendy R. Morgan v. LeRoy (In re LeRoy), 251 B.R. 490, 499 (Bankr. N.D. Ill. 2000). Whether Leck was acting in a fiduciary capacity for purposes of the statutory provision is a question of federal law. See Salem Servs., Inc. v. Hussain (In re Hussain), 308 B.R. 861, 867 (Bankr. N.D. Ill. 2004); People v. Volpert (In re Volpert), 175 B.R. 247, 260 (Bankr. N.D. Ill. 1994). However, state law is relevant to the inquiry. McDade, 282 B.R. at 659; Blackhawk B.M.X., Inc. v. Anderson (In re Anderson), 64 B.R. 331, 334 (Bankr. N.D. Ill. 1986).

Under Illinois law, the association created between an attorney and his client is a fiduciary relationship. Janikowski, 60 B.R. at 788 (citing In re Kolb, 199 N.E. 92, 93 (Ill. 1934); People ex rel. Chi. Bar Ass'n v. Green, 187 N.E. 811, 813 (Ill. 1933)). Further, the Seventh

7

Circuit has explicitly held that "a lawyer is deemed the fiduciary of his client, even if he does not manage a fund entrusted to him by the client."[4] In re Marchiando, 13 F.3d 1111, 1115 (7th Cir. 1994). The key element of a fiduciary relationship is "a difference in knowledge or power between fiduciary and principal." Id. at 1116; see also Holstein, 272 B.R. at 482. In addition, a fiduciary relationship must have an existence independent of a defendant's misconduct under § 523(a)(4). Marchiando, 13 F.3d at 1115-16.

In this case, a fiduciary relationship existed between Leck as attorney and Kurczaba as client. Leck held "a position of ascendancy" over Kurczaba by virtue of his professional status, and the relationship between the two required Kurczaba to "repose a special confidence" in Leck. See id. at 1116. Further, Leck as attorney had a fiduciary relationship to Kurczaba before Leck was disbarred or allegedly made any fraudulent misrepresentation. Therefore, the threshold issue of the existence of a fiduciary relationship has been met.

### 2. Debt Caused by Leck's Fraud While Acting as a Fiduciary

Next, Kurczaba must establish that the debt at issue was caused by Leck's fraudulent conduct while acting as a fiduciary. Fraud within the meaning of § 523(a)(4) requires a showing of positive, intentional misrepresentation or acts involving moral turpitude. Scarpello, 272 B.R. at 701; LeRoy, 251 B.R. at 500; Janikowski, 60 B.R. at 789.

Kurczaba alleges that the debt at issue is the result of Leck's "fraudulent actions while acting as Plaintiff's counsel." Compl. at ¶ 15. Providing more detail, Kurczaba's complaint alleges that Leck:

---

[4] Some circuits hold that the attorney-client relationship, by itself, does not establish a fiduciary relationship without the existence of an express trust for purposes of § 523(a)(4). See, e.g., Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1371 (10th Cir. 1996).

fraudulently acted as though he was prosecuting Plaintiff's lawsuit when in reality he has been disbarred; failed to inform Plaintiff that he was disbarred and forged another attorney's name to a motion to vacate a dismissal for want of prosecution in Plaintiff's case without the knowledge or authority of that attorney.

Id. at ¶ 9.

Leck does not challenge the allegation that he used another attorney's name on the motion to vacate, and this conduct is undisputedly fraudulent. However, Leck's illegal use of another lawyer's name was not the cause of Kurczaba's damages. Rather, the damages were the result of Leck's failure to disclose to Kurczaba that he was no longer licensed to practice law in Illinois and his failure to refer the case to another attorney. The question, then, is whether these details, standing alone, satisfy the specificity requirements of Rule 9(b).

The court finds that they do not. The sweeping generalization about Leck's "fraudulent actions" in paragraph 15 of the complaint is clearly a conclusory allegation. The added details, however, fail to specify the precise when, where, and how required under Rule 9(b). Kurczaba notes, merely, that Leck "acted as though he was prosecuting Plaintiff's lawsuit," without providing facts in support of that allegation. He must supply those details in his complaint. Kurczaba must also plead in detail the date when he first learned and fully realized the impact of Leck's alleged fraudulent actions and the circumstances by which he obtained that knowledge. All of those inadequacies must be corrected by amended complaint.

The allegations of fraud in the complaint are insufficient to survive Leck's motion to dismiss, and the court therefore grants the motion on that basis.

3.  **The Effect of the Settlement Agreement**

Leck contends that, because the suit against him sounds in malpractice, he was merely

9

negligent and, thus, he could not have committed fraud under § 523(a)(4). More specifically, Leck argues that the underlying debt, arising from the breach of his fiduciary duty, was extinguished upon the execution of the Settlement Agreement.

A breach of contractual duties is not functionally equivalent to fiduciary fraud. Scarpello, 272 B.R. at 703 (finding that debtor's actions which produced dissipation of funds in her cousin's account constituted a breach of agreement with creditor but did not rise to the level of fraud, defalcation, embezzlement, or larceny under § 523(a)(4)). Moreover, the Seventh Circuit has long held that if a note, by explicit agreement, is given and received as payment in connection with or waiver of an antecedent action, then "the original debt is fully satisfied by acceptance of the note." Md. Cas. Co. v. Cushing, 171 F.2d 257, 258-59 (7th Cir. 1948).

However, since Maryland Casualty Company was decided in the 1940s, the United States Supreme Court has directly addressed the issue at bar. Specifically, the Court has found that reducing a fraud claim to settlement does not change the nature of the debt for dischargeability purposes. Archer v. Warner, 538 U.S. 314, 316, 323 (2003).

In Archer, buyers of a business brought a state court action against the sellers for fraud in connection with the sale. Id. at 317. Under a settlement agreement, the sellers executed a $100,000.00 promissory note. Id. When they defaulted on the first payment, the buyers brought another suit in state court for payment of the note. Id. at 317-18. The sellers then filed for bankruptcy under chapter 7. Id. at 318. The buyers filed an adversary complaint, seeking judgment for the amount due under the note, as well as a determination that the debt was nondischargeable. Id. The Supreme Court held that debt for money promised in a settlement agreement, which released prior state-law claims against the debtors for fraud, could constitute

10

debt for money obtained by fraud within the meaning of § 523(a)(2)(A). Id. at 321. The Court noted that:

> 'Congress [through the Bankruptcy Code] intended the fullest possible inquiry' to ensure that 'all debts arising out of' fraud are 'excepted from discharge,' no matter what their form. Congress also intended to allow the relevant determination ([of] whether a debt arises out of fraud) to take place in bankruptcy court, not to force it to occur earlier in state court when nondischargeability concerns 'are not directly in issue and neither party has a full incentive to litigate them.'

Id. (quoting Brown v. Felsen, 442 U.S. 127, 138 (1979), and citing 11 U.S.C. § 523(a)). Although Archer involved a claim of nondischargeability under § 523(a)(2)(A), the reasoning of Archer also controls the outcome in cases pursuant to § 523(a)(4), because both exceptions to discharge involve fraudulent conduct. See Giaimo v. Detrano (In re Detrano), 326 F.3d 319, 322 (2d Cir. 2003). Thus, a debt for money promised in a settlement agreement, along with a release of underlying claims, can amount to a debt for money obtained by fraud for purposes of § 523(a)(4). "[T]he mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry in the true nature of the debt." Brown, 442 U.S. at 138.

In light of Archer, the debt originating from Leck's alleged fraud should not be discharged simply because Leck entered into a settlement agreement. If Kurczaba's claim against Leck would have created a nondischargeable debt under § 523(a)(4) had that claim been litigated to judgment in Kurczaba's favor, it is no defense for Leck to argue that he has replaced that potential liability with a dischargeable contractual obligation through the Settlement Agreement.

### 4. Unenforceable Penalty Clause

Finally, Leck argues that the provision in the Settlement Agreement requiring him to pay

11

an additional $30,000.00 for failure to remit the settlement amount of $50,000.00 in a timely manner is an unenforceable penalty clause whose only purpose was to secure performance of the contract. That provision, paragraph 4 of the Settlement Agreement, provides, in pertinent part, as follows:

> That in the event that LAWRENCE LECK breaches any and all of the provisions set forth in this Agreement, he will be assessed with a penalty of Thirty Thousand and No/100 ($30,000.00) dollars in addition to the agreed-upon settlement of Fifty Thousand and No/100 ($50,000.00) dollars; thereby a sum in toto of Eighty Thousand and No/100 ($80,000.00) Dollars plus reasonable attorneys' fees and costs for enforcement of the terms of this agreement, will be due and owing to EDWARD KURCZABA from LAWRENCE LECK individually.

In response to Leck's contention above, Kurczaba attempts to characterize the provision in the Settlement Agreement as an "ancillary obligation" that attaches to the "primary debt."

State law determines whether a contractual provision is a valid damages clause or an unenforceable penalty. Energy Plus Consulting, LLC v Ill. Fuel Co., 371 F.3d 907, 909 (7th Cir. 2004). In interpreting contractual provisions that specify damages, Illinois courts distinguish between liquidated damages, which are enforceable, and penalties, which are not. Checkers Eight Ltd. P'ship v. Hawkins, 241 F.3d 558, 561-62 (7th Cir. 2001). Courts will usually enforce a liquidated damages provision where it can be shown that (1) the actual damages from a breach would be difficult to measure at the time the contract was made, and (2) the specified amount of damages is reasonable, given the anticipated or actual loss caused by the breach. Id. at 562; see also Energy Plus, 371 F.3d at 909; Am. Nat'l Bank & Trust Co. of Chi. v. Reg'l Transp. Auth., 125 F.3d 420, 440 (7th Cir. 1997). Whether a damages provision is a liquidated damages clause or a penalty clause is a question of law. Raffel v. Medallion Kitchens of Minn., Inc., 139 F.3d 1142, 1145-46 (7th Cir. 1998); Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1290 (7th

Cir. 1985).

Given these legal principles, the provision of the Settlement Agreement requiring Leck to pay an additional $30,000.00 is an unenforceable penalty clause. The Settlement Agreement, itself, labels the assessment a "penalty." More importantly, however, the amount of the actual damages resulting from the breach was established at a sum certain of $50,000.00, and the additional damages of $30,000.00 are excessive or unreasonable compared to actual damages. Finally, the extra $30,000.00 in damages appears to have no purpose other than ensuring that Leck made the payment on time. If the only purpose of a provision fixing liquidated damages is to secure performance of the contract, the provision will be deemed an unenforceable penalty. Id.; Am. Nat'l Bank, 125 F.3d at 440; Med+Plus Neck & Back Pain Ctr., S.C. v. Noffsinger, 726 N.E.2d 687, 693 (Ill. App. Ct. 2000) (noting that damages cannot be used as "a penalty to punish nonperformance or as a threat to secure performance").

Each factor considered by the Illinois courts leads to the conclusion that the provision in the Settlement Agreement is a penalty, and Kurczaba has not explained why the additional damages should be allowed. Accordingly, if judgment is ultimately entered in Kurczaba's favor, he will be entitled to only the actual damages caused by Leck's late payment, as measured by an appropriate interest rate. See Checkers, 241 F.3d at 562 (noting that "actual damages caused by monetary payments being late are not difficult to measure because interest rates can be used to estimate the time value of money"). Kurczaba may also be entitled to reasonable attorneys' fees. See Klingman, 831 F.2d at 1296 (stating that "[a]ncillary obligations such as attorneys' fees and interest may attach to the primary debt").

## IV. CONCLUSION

For the foregoing reasons, the court grants by separate order of even date Leck's motion to dismiss for failure to state a cause of action under § 523(a)(4), but without prejudice to Kurczaba filing an amended complaint within the time provided in the order of even date.

ENTERED:

DATE: October 25, 2005

JOHN D. SCHWARTZ
United States Bankruptcy Judge